J-S29043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUAN MELENDEZ-PEREZ | : | |
| | : | |
| Appellant | : | No. 1086 EDA 2017 |

Appeal from the Judgment of Sentence November 2, 2016
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000810-2015

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:              **FILED JUNE 1, 2018**

Appellant, Juan Melendez-Perez, appeals from the judgment of sentence entered in the Court of Common Pleas of Lehigh County, which, sitting as finder of fact in his non-jury trial, found him guilty of three counts of Possession with Intent to Deliver a Controlled Substance ("PWID"), three counts of Possession of a Controlled Substance, and two counts of Criminal Use of a Communication Facility.[1]  Sentenced to an aggregate term six to 12 years' incarceration, Appellant raises alternate challenges to the sufficiency and the weight of the evidence.  We affirm.

The trial court aptly sets forth the facts and procedural history as follows:

---

[1] 35 Pa.C.S.A. § 780-115(a)(30), § 780-115(a)(16), and 18 Pa.C.S.A. § 7512, respectively.

---

*   Former Justice specially assigned to the Superior Court.

In the spring of 2014, members of the Pennsylvania State Police (PSP) Vice and Narcotics Unit were conducting a narcotics investigation utilizing a confidential informant (CI). The CI provided Trooper Douglas Rex with the full name, address, and description of a male that was known to the CI to be a heroin and cocaine supplier. The CI stated the man's street name was "Ralfy"[3] and that he resided at 428 Front Street, Allentown, Lehigh County, Pennsylvania. With this information, Rex was able to obtain a photograph, which he showed to the CI. The CI confirmed that was the individual he knew to be the supplier. The photograph was of the defendant [hereinafter "Appellant"], Juan Melendez-Perez.

---

[3] The record contains various spellings of this nickname, including Rafi, Rafy, Raffy, and Ralfy. Appellant testified he has a tattoo on his neck of "Ralfy," so [this decision] uses that spelling for consistency.

---

On April 11, 2014, at approximately 12:30 p.m., Trooper Rex met with the CI. In the trooper's presence, the CI place[d] a phone call to cellular phone number [***-***-****] and arranged the purchase of ½ ounce of cocaine for $650.00. The CI arranged to meet the supplier in the area of the Polish Club at 446 North Front Street in Allentown. Rex searched the CI's person and vehicle and found no money or contraband. Rex supplied the CI with $650.0 in prerecorded U.S. Currency and then followed the CI to the Polish Club.

Once at the Police Club, Trooper Rex and other PSP troopers set up surveillance on the CI's vehicle. At approximately 1:21 p.m., Rex received a text message from the CI indicating that "Ralfy" was walking towards the vehicle. Rex observed the Appellant approach the passenger side of the CI's vehicle and make verbal contact with the CI. At approximately 2:15 p.m., two Hispanic males arrived in an Acura and pulled behind the CI's vehicle. The Appellant walked away from the CI's vehicle and met briefly with the two Hispanic males behind the Acura. Appellant then walked back to the CI's vehicle and made contact with the CI. Appellant then walked away, and the CI drove away. Troopers maintained constant surveillance on the CI's vehicle until Rex met up with the CI. The CI provided Rex with a clear, plastic bag containing a

white pow[d]er substance, which subsequently tested positive for cocaine.[4]

---

[4] Lab results from the Pennsylvania State Police showed the substance weighed 13.92 grams and tested positive for cocaine.

---

On May 15, 2014, at approximately 1:10 p.m., Trooper Rex met again with the CI. The CI arranged for the purchase of three bundles of heroin from Appellant for $80.00 each. Rex searched the CI's person and vehicle and found no contraband; the CI had four $1.00 bills on his person, which were secured by Rex.[5] Rex provided the CI with $240.000 in prerecorded U.S. Currency. At approximately 1:20 p.m., in Rex's presence, the CI placed a phone call to [a different cellular phone number than before], and thereafter went to the Polish Club at 446 North Front Street. Rex and other troopers followed and set up surveillance. At 1:36 p.m., Appellant arrived at the Polish Club and entered the front passenger seat of the CI's vehicle. A few minutes later, Appellant exited the vehicle and subsequently entered 428 North Front Street. The CI drove away and met with Rex. The CI provided Rex with three bundles of suspected heroin. Each bundle contained 10 white envelopes stamped with a picture of a baseball and the words "Home Run," held together by yellow and red rubber bands. The substance later tested positive for heroin.[6]

---

[5] The bills were returned to the CI following the controlled buy.

[6] Lab results from the Pennsylvania State Police showed the substance weighed .69 grams and tested positive for heroin.

---

On July 2, 2014, at approximately 1:15 p.m., Trooper Rex contacted the CI again in order to purchase two bundles of heroin from Appellant. Rex searched the CI's person and vehicle and found no money and contraband. Rex provided the CI with $160.00 in prerecorded U.S. Currency. Based on information received by the CI, the location of this buy was arranged for the area of 831 North Jordan Street. Rex and other troopers set up surveillance in that area. At approximately 1:30 p.m., the CI arrived and parked in front of 831 North Jordan Street. A few

minutes later, Appellant exited the front door of the residence at 831 North Jordan Street and approached the front passenger side of the CI's vehicle. Appellant leaned into the CI's vehicle for a few minutes, then walked back into 831 North Jordan Street.

At approximately 1:42 p.m., Appellant again exited 831 North Jordan Street, approached the driver's side of the CI's vehicle, and leaned into the vehicle for about 10 seconds. Appellant then walked north on North Jordan Street and the CI drove away. Rex met with the CI, and the CI provided Rex with two bundles of suspected heroin, each containing 10 individual envelopes stamped with purple and red stars, which later tested positive for heroin.[7]

---

[7] Lab results from the Pennsylvania State Police showed the substance weighed .71 grams and tested positive for heroin.

---

At trial, Appellant testified that he [was unfamiliar with one cell phone number the CI called to arrange a buy,] and that [the other number] was his brother's cell phone number. He also testified that people often confuse him for his brother.

Trial Court Opinion, 6/2/17, at 1-4.

As noted above, the court found Appellant guilty on all counts and sentenced him to an aggregate term of imprisonment of 6 to 12 years. Appellant filed timely post-sentence motions challenging his verdict as against the weight of the evidence and contending his sentence was excessive. The trial court denied these motions on February 28, 2017. This timely appeal followed.

Appellant presents the following questions for our consideration:

I.     WHETHER THE EVIDENCE WAS SUFFICIENT TO SUSTAIN [APPELLANT'S] CONVICTIONS FOR POSSESSION WITH INTENT TO DELIVER AND CRIMINAL USE OF COMMUNICATION FACILITY?

- 4 -

**II.** **WAS THE VERDICT AGAINST THE WEIGHT OF ALL THE EVIDENCE IN REGARDS TO THE PROOF OF WHETHER OR NOT [APPELLANT] WAS PROPERLY CONVICTED OF POSSESSION WITH INTENT TO DELIVER AND CRIMINAL USE OF COMMUNICATION FACILITY WHEN THE COMMONWEALTH FAILED TO HAVE THE CONFIDENTIAL INFORMANT TESTIFY ABOUT [APPELLANT'S] INVOLVEMENT IN THE ALLEGED OFFENSES?**

Appellant's brief at 10.

Appellant's first issue on appeal is a challenge to the sufficiency of the evidence. Our review of a sufficiency claim is well-settled:

> "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." ***Commonwealth v. Weiss***, 565 Pa. 504, 776 A.2d 958, 963 (2001), ***cert. denied,*** 535 U.S. 1101, 122 S.Ct. 2303, 152 L.Ed.2d 1059 (2002). It [is] incumbent upon the Superior Court to consider all of the evidence introduced at the time of trial, and apparently believed by the fact finder[.] "In applying this standard, [the reviewing court must] bear in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's ruling thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence." ***Commonwealth v. Watkins***, 577 Pa. 194, 843 A.2d 1203, 1211 (2003).

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237 (Pa. 2007).

Appellant centers his sufficiency issue claim on the Commonwealth's alleged failure to establish the identity of the man with whom the CI transacted on the dates in question. Specifically, because the CI did not testify at trial, Appellant argues, the Commonwealth relied solely on circumstantial

evidence that was inadequate to prove Appellant was the person who made arrangements with the CI by cell phone and later carried out the transactions as planned. We disagree.

At trial, PSP Trooper Rex testified that he personally observed the CI engage in drug transactions with the same man on four separate occasions, three of which formed the basis for the charges at issue, and the trooper was "absolutely positive" that man was Appellant. N.T. 8/5/16 at 74-75, 79-82. As noted above, Trooper Rex described in detail the procedures he followed in commencing the investigation, which included ascertaining from the CI Appellant's name and address, obtaining a photograph of Appellant based on such information, and gaining the CI's confirmation that the photograph depicted the man with whom he transacted. During each surveillance, Trooper Rex would compare the dealer to the photograph, and he testified he had "absolutely no doubt" he was watching Appellant each time. N.T. at 80, 82.

With regard to Appellant's main point of contention in both this issue and the next, we note there is no requirement that the CI testify at trial, or that the Commonwealth provide an electronic recording of the transaction. *See Commonwealth v. Watson*, 69 A.3d 605, 607 (Pa. Super. 2013) ("The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source.") (quotation omitted). Here, an experienced trooper specifically trained to make identifications in the field testified with certainty that he observed Appellant supply the CI with heroin on four separate

controlled buys.[2]  As such, we find this evidence, along with the totality of evidence presented by the Commonwealth, was sufficient for the fact-finder to find Appellant guilty of all possession and PWID charges.

With respect to Appellant's convictions for criminal use of a communications facility, he argues he "was never identified as being on the phone with the [CI] for any of the three phone calls that led to the three drug transactions.  The Commonwealth presented no significant evidence that directly tied [Appellant] to those phones or to their specific usage during the conversations [in question]."  Appellant's brief, at 18.

Section 7512(a) of the Crimes Code provides in relevant part "[a] person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act." 18 Pa.C.S.A. § 7512(a) (footnote omitted).  Thus, to sustain a conviction under Section 7512, the Commonwealth must establish beyond a reasonable doubt that

> Appellants knowingly and intentionally used a communication facility; (2) Appellants knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred.... Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony.

---

[2] To the extent Appellant argues that people often confuse him and his brother, with whom he claims to share a strong resemblance, this argument goes not to the sufficiency of the evidence but to its weight.

*Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa.Super. 2004) (citations omitted).

According to the testimony of Trooper Rex, he watched the CI make phone calls to arrange two buys, the CI confirmed he had just spoken to Appellant to set up the buy, the buy took place between the CI and Appellant as planned, and the CI handed the drugs to Trooper Rex afterward. Regardless of whether the CI called a cellphone belonging to Appellant or someone else, the evidence established that Appellant used the cellphone communications to facilitate two buys. Viewing the evidence in a light most favorable to the Commonwealth as verdict winner, this evidence sufficed to prove each element of Section 7512(a) beyond a reasonable doubt.

In Appellant's second issue, he argues that guilty verdicts on both counts under Section 7512(a) went against the weight of the evidence, as authorities neither heard nor spoke to the individual whom the CI called, and neither phone number was directly linked to Appellant. Instead, one number was unknown and the other belonged to his brother, whom, Appellant testified at trial, people often mistook for him.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as

to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–1055 (Pa. 2013) (internal quotation marks and citations omitted).

Our Supreme Court has further clarified that an appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> [*Commonwealth v. Widmar*, 744 A.2d 745, 753 (Pa. 2000)] (emphasis added).

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> > The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to

- 9 -

> prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

> [**Id.**]

***Clay***, ***supra*** (some internal citations omitted).

In denying Appellant's post-sentence motion for a new trial based on the weight of the evidence, the trial court noted the following:

> [Appellant] has not identified exactly what evidence should have been afforded greater weight. However, based on his trial testimony, it appears [Appellant] takes issue with Trooper Rex's identification of him, and with the fact that the cellphone numbers were not specifically linked to him. First, Trooper Rex positively identified [Appellant] as the individual that met with the CI on three occasions, and I find his testimony to be credible. Second, the CI placed phone calls to the cellphone numbers in question and arranged for the purchase of specific quantities of narcotics, for a specific cost, and at a specific location. Following the calls, [Appellant] was the only individual to meet with the CI at the specified location, and the CI was provided with the specified quantities of narcotics for the specified amount of cash. It can certainly be inferred that [Appellant] was the person receiving the phone calls.

Trial Court Opinion, at 6.

After careful review of the certified record, we conclude the trial court did not abuse its discretion in denying Appellant's motion for a new trial. The trial court, sitting as finder of fact, was free to find Trooper Rex's testimony credible and Appellant's testimony incredible with respect to the issue of the supplier's identity. ***See Commonwealth v. Sanchez***, 34 A.3d 24, 26–27 (Pa. 2011) (stating, "[t]he finder of fact ... the jury—exclusively weighs the

evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence[ ]"). Under our standard of review, we may not substitute our judgment for that of the fact-finder. ***Commonwealth v. Sinnott***, 30 A.3d 1105, 1110 (Pa. 2011). Therefore, discerning nothing in the verdict that shocks one's sense of justice, we conclude Appellant's weight of the evidence claim devoid of merit.

Judgment of sentence is affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/18